UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PEPPE K. PARK,

      Petitioner,

v.                                      CASE NO. 6:10-cv-1031-Orl-37KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

**<u>ORDER</u>**

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in which they asserted the petition was untimely filed (Doc. No. 8).  Petitioner filed a reply to the response (Doc. No. 9).  The Court directed Respondents to file a supplemental response to the petition addressing the arguments raised in Petitioner's reply and addressing the merits of Petitioner's claims (Doc. No. 18).  Respondents filed a supplemental response, wherein they continued to argue that the petition was untimely but alternatively addressed the merits of Petitioner's claims (Doc. No. 23).[1]  Petitioner filed a reply to the supplemental response (Doc. No. 29).

_____

[1]Upon review of Respondents' argument that the petition is untimely, the Court concludes that this argument is without merit.  The record reflects that on October 25, 2010, the state court directed the term "drug offender" to be deleted from the judgment and for an amended judgment to be entered.  (App. L.)  Thus, Petitioner's conviction became final thirty days after entry of the amended judgment, when the time for filing an appeal expired.

Petitioner alleges eight claims.  For the following reasons, the petition is denied.

## I.      Procedural History

Petitioner was charged by information with one count of DUI manslaughter.  A jury trial was conducted, and the jury found Petitioner guilty as charged.  The trial court sentenced Petitioner to a 131.25-month term of imprisonment.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  The state court denied the motion, and Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  The state court denied the motion but directed the entry of an amended judgment.  Petitioner did not appeal.

## II.     Legal Standards

### A.      Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

*See Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d 1286 (11th Cir. 2007) (concluding that one-year period began to run from the judgment entered upon resentencing rather than from the original judgment of conviction and sentence).  Thus, the instant petition filed on July 2, 2010, was filed within the one-year limitation period.

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.**     ***Standard for Ineffective Assistance of Counsel***

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   *Analysis*

#### A.   *Claim One*

Petitioner asserts that his right to effective assistance of counsel was denied based on a conflict of interest created by counsel's fraud and deception.  In support of this claim, Petitioner alleges that trial counsel, who was employed by the Public Defender's ("PD") Office at the commencement of the representation, fraudulently appointed himself as Petitioner's private attorney without Petitioner's consent after leaving the PD's Office. Petitioner further asserts that counsel attempted to obtain money from him for his representation.  Petitioner maintains that as a result of trial counsel's fraudulent behavior, he was prevented from presenting witnesses to establish that (1) a police officer may have contributed to the victim's death, (2) he was illegally seized, (3) the police officer lacked probable cause to draw Petitioner's blood, and (4) the victim caused the motorcycle accident based on her intoxication from alcohol and narcotics.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied the claim. (Doc. No. 2 at 95-96.)  The state court reasoned that counsel's move from the PD's Office to private practice did not create a conflict of interest and that Petitioner failed to demonstrate any prejudice to his defense as a result of counsel's change in employment.  *Id*.

"Where an ineffective assistance claim is based on a conflict of interest, 'a defendant

5

must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance.'" *McCorkle v. United States*, 325 F. App'x 804, 808 (11th Cir. 2009) (quoting *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001)) (emphasis omitted); *see also Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). "'An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.''" *McCorkle*, 325 F. App'x at 808 (quoting *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999)). "The conflict cannot be merely possible, speculative, or hypothetical." *Id.* (citing *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001)).

To distinguish between an actual and a possible conflict of interest, courts "'will not find an actual conflict of interest unless [the defendant] can point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *Id.* (quoting *Reynolds*, 253 F.3d at 1343). Thus, to establish the first part of the test, a defendant

> "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to [himself]. If he did not make such a choice, the conflict remain(s) hypothetical."

*Id.* (quoting *Reynolds*, 253 F.3d at 1343). As to the second part of the test, to prove an "'adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.'" *Id.* (*Reynolds*, 253 F.3d at 1343*)*.

In the instant case, Petitioner has not demonstrated that an actual conflict of interest

6

existed or that what Petitioner describes as a conflict, had an adverse effect on counsel's performance. The simple fact that counsel changed employment during the course of his representation of Petitioner does not show an inconsistent interest. Furthermore, the record establishes that Petitioner knew prior to trial that counsel was no longer employed by the PD's Office. (Doc. No. 2 at 144) (Petitioner's Mot. for New Trial, wherein Petitioner asserts "[s]everal days before the next scheduled trial date . . . counsel explained that he'd been busy moving to private practice. . . ."). Nevertheless, Petitioner never advised the trial court that he did not consent to counsel's representation on this basis. Moreover, even assuming counsel attempted to obtain money from Petitioner, Petitioner admits that he did not give counsel money, and the record establishes that counsel continued to competently represent Petitioner. As will be discussed more fully *infra* in relation to Petitioner's remaining claims, Petitioner has not established that the purported conflict adversely affected counsel's performance. Accordingly, claim one is denied pursuant to Section 2254(d).

### B.    *Claim Two*

Petitioner contends that trial counsel assisted the State "through a procedure comprised of fraud and deception" to thwart Petitioner from moving to suppress the blood alcohol test result.[3] Petitioner argues that his blood alcohol test result was not admissible because at the time Officer Marcinek ordered the blood draw, he did not have probable

---

[3]In his Supplemental Reply, Petitioner contends that he does not intend to raise claims two through eight as claims of ineffective assistance of counsel. Regardless of how Petitioner attempts to couch his claims, however, his claims allege he was denied his right to effective counsel guaranteed by the Constitution. Thus, his claims are ineffective assistance of counsel claims, which must be evaluated pursuant to *Strickland.*

cause, absent Petitioner's statements, to believe that Petitioner was the driver of the motorcycle or that Petitioner was intoxicated.  Petitioner relies on Florida's accident report privilege, Section 316.066(4), Florida Statutes, to support his argument that law enforcement could not consider his statements to determine probable cause.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied the claim pursuant to *Strickland*.  (Doc. No. 2 at 96-98.)  The state court noted that counsel had filed a motion prior to trial to exclude Petitioner's statements admitting he was the operator of the motorcycle, and the state court denied the motion, finding that sufficient evidence existed independent of Petitioner's statements to establish he was the operator of the motorcycle.  *Id*.  The evidence included the fact that the motorcycle was registered to Petitioner, he was observed picking up the motorcycle immediately after the accident, he had custody of the motorcycle keys, and he apologized to the homeowner of the yard in which he crashed.  *Id*.  The state court further determined that sufficient evidence existed for the officers to have probable cause to believe Petitioner was intoxicated at the time Officer Marcinik ordered the blood draw.  *Id*.  Specifically, Officer Marcinik observed that Petitioner's eyes were red and watery, his gaze was slightly fixed, his speech was slow, his face was lethargic, and his breath smelled of alcohol.  *Id*.  The state court concluded that counsel was not ineffective, therefore, for failing to file a motion to suppress the blood test result. *Id*.

Pursuant to Section 316.1933(1)(a), Florida Statutes,

[i]f a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the

8

influence of alcoholic beverages, . . . has caused the death or serious bodily injury of a human being, a law enforcement officer shall require the person driving or in actual physical control of the motor vehicle to submit to a test of the person's blood. . . .

Fla. Stat. § 316.1933(1)(a) (2002).   Section 316.066(4), Florida Statutes mandates that statements made to investigative officers by a person involved in an accident in order to complete a crash report as required by the statute are not admissible as evidence in any criminal trial.  *Evans v. Hamilton*,  885 So. 2d 950, 950 (Fla. 4th DCA 2004).   However, "section 316.066(4) only prohibits the State from using as evidence at trial either the crash report or statements made to law enforcement during a traffic investigation by persons involved in the crash."  *State v. Cino*,  931 So. 2d 164, 167 (Fla. 5th DCA 2006).   The statute provides immunity only to "'such statements and communications as the driver, owner, or occupant of a vehicle is compelled to make in order to comply with his or her statutory duty under section 316.066(1) and (2) [to report an accident]' so as to avoid a Fifth Amendment violation."  *Evans*, 885 So. 2d at 950 (quoting *Brackin v. Boles*, 452 So. 2d 540, 544 (Fla. 1984)). "The test to be applied in determining whether the accident report privilege is applicable is whether the privilege against self-incrimination was violated by requiring the person involved in the accident to answer the questions posed."  *Id*. at 950-51.

In the instant case, the Court concludes that the state court's denial of this claim is neither contrary to, nor an unreasonable application of, *Strickland* nor is it based on an unreasonable determination of the facts in light of the evidence presented.  Officer Marcinek indicated that when he arrived on the scene, he observed the female victim, Petitioner, two officers, and a motorcycle.  (Doc. No. 8-3 at 85.)  Officer Marcinek determined that the

9

female was dead and observed that Petitioner's breath smelled of alcohol, Petitioner had

red, glassy eyes, a fixed gaze, and a lethargic mannerism on his face. *Id.* at 91, 94. Officer

Marcinek further indicated that Petitioner gave him the keys to the motorcycle prior to the

blood draw. *Id.* at 97. From Officer Marcinek's observations at the scene, the Court

concludes that probable cause existed to believe, even in the absence of statements made by

Petitioner, that the motorcycle was either driven by or in the actual physical control of

Petitioner and that he was under the influence of alcohol. Thus, the blood draw was

permissible. No basis existed, therefore, to suppress the blood test result nor would a

motion to suppress have been granted. Accordingly, claim two is denied pursuant to

Section 2254(d).

> **C.**    ***Claim Three***

Petitioner asserts that trial counsel assisted the State "through a procedure comprised

of fraud and deception" to thwart Petitioner from moving to suppress his statement to

police based on his illegal seizure where no probable cause existed. In support of the claim,

Petitioner maintains that he was seized by force at the scene by Officer Marcinek, who did

not have probable cause to believe Petitioner was the operator of the motorcycle. Petitioner

asserts that the paramedics could have testified that he was locked in the DUI van.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief

pursuant to *Strickland*. (Doc. No. 2 at 99-100.) The state court reasoned that Officer

Marcinek testified that Petitioner was not arrested or seized at the scene of the offense.

Petitioner was asked to sit in the DUI van at one point to remove him from view of the

victim's body.  *Id.* at 99.  The state court further noted that Officer Marcinek testified that Petitioner agreed to go to the police station, was not under arrest, and was not handcuffed. *Id*.

Initially, the Court notes that as discussed *supra* in claim two, probable cause existed to believe Petitioner was driving under the influence and caused the death of the victim. Additionally, Officer Marcinek testified that Petitioner was not in custody at either the scene of the accident or at the police station.  (Doc. No. 8-3 at 112.)  Officer Marcinek stated that Petitioner was asked to sit in the DUI van in order to remove him from view of the victim, and Petitioner did so.  *Id*.  Officer Marcinek testified that Petitioner agreed to go to the police station, he was not handcuffed, and he was not under arrest.  *Id*. at 114.  Once at the police station, Officer Marcinek advised Petitioner of his *Miranda* rights, and Petitioner waived his rights and answered Officer Marcinek's questions.[4]  *Id*. at 114-116.  Petitioner was not arrested after his statement and left the police station.  (Doc. No. 8-4 at 83.)  Furthermore, Petitioner testified  at trial that when he gave his statement to police, he did not think they were "going to come back and try to make a major criminal issue out of an accident."  (Doc. No. 8-5 at 64-65.)  He further said that he did not believe he was going to be prosecuted at the time he gave his statement.  *Id*. at 68.  Thus, Petitioner clearly did not think he had been arrested at the time of the interview.  In sum, the evidence establishes that probable cause existed to detain Petitioner, Petitioner was not in custody at the time he gave his statement,

---

[4] A videotape of the statement, including the *Miranda* warning and Petitioner's waiver thereof, was entered into evidence.  (Doc. No. 8-4 at 33-93.)

and he waived his *Miranda* rights.[5]  Thus, a motion to suppress Petitioner's statement based on a lack of probable cause for arrest would not have been successful, and counsel was not ineffective for failing to file a non-meritorious motion.  Accordingly, claim three is denied pursuant to Section 2254(d).

  **D. *Claim Four***

  Petitioner contends that trial counsel assisted the State through "a procedure comprised of fraud and deception" to violate his constitutional right to confront witnesses.  Petitioner asserts that counsel fraudulently stipulated to the admission of the implied consent certification of blood withdrawal affidavit without the testimony of Joshua Brown ("Brown"), the paramedic who drew the blood.

  Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland.*  (Doc. No. 102-05.)  The state court noted that counsel filed a pretrial motion to exclude the blood evidence because the State was unable to produce Brown as a witness at trial, and Officer Marcinek did not observe the blood draw.  *Id.*  The trial court reviewed the crime scene video which showed that Officer Marcinek was present at the blood draw and denied the motion, finding that counsel's argument went to the weight and not the admissibility of the blood evidence.  *Id.*  The state court noted that Brown's

---

   [5]To the extent Petitioner asserts that the paramedics would have testified that he was locked in the DUI van, this contention is unsupported by any evidence.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)).

paramedic certification was admitted as an exhibit at trial and that Brad Hall ("Chief Hall"), Chief of Operations for Brevard County Fire Rescue Battalion, testified that Brown was a certified paramedic at the time of the blood draw. *Id*. at 103. The state court further reasoned that Officer Marcinek testified that he obtained the blood draw kit from the DUI van, gave it to Brown, stood next to Brown as he took Petitioner's blood, filled out the labels on the tubes, sealed the tubes inside a box, and delivered the samples to the police station. *Id*. at 103-04. The state court determined that counsel vigorously attacked the admissibility of the blood draw by challenging the State's ability to lay a foundation or establish the chain of custody. *Id*. at 104. The state court further concluded that pursuant to Florida law, Officer Marcinek's testimony was sufficient to establish the chain of custody of the blood draw. *Id*. (citing *Dodge v. State*, 805 So. 2d 990 (Fla. 4th DCA 2001)). The state court also determined that the admission of Brown's paramedic certification did not result in prejudice because Chief Hall testified that Brown was a certified paramedic at the time of the blood draw. *Id*.

Petitioner has failed to demonstrate that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland*. Initially, the Court notes that there is no indication that an "Implied Consent of Blood Withdrawal affidavit" was admitted into evidence, either over objection or pursuant to stipulation. *See* App. N. Thus, counsel could not be ineffective for failing to object to the admission of such document.

To the extent Petitioner is referring to counsel's failure to object to the admission of Brown's paramedic certification, Petitioner has not demonstrated a violation of the

13

Confrontation Clause.  Brown's paramedic certification was admitted pursuant to Florida's Business Records Exception and was not a testimonial statement.   Instead, it was a certification by the State of Florida that Brown was certified to be a paramedic and was not created "for the purpose of establishing or proving some fact at trial."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009); *see also United States v. Oliveira-Guaresqui*,  445 F. App'x 224, 227 (11th Cir. 2011) (affirming admissibility of birth certificate).  Moreover, Chief Hall testified that Brown was a certified paramedic, and Section 316.1933(2)(a), Florida Statutes, requires a certified paramedic or other specified medical specialist to withdraw blood for alcohol content testing.  Officer Marcinek further testified that he observed Brown draw the blood from Petitioner and immediately took the vials,  labeled them, and stored them until he deposited them at the police station.  Thus, under Florida law, the foundation for the admission of the blood test results and the chain of custody was established.  *See, e.g., Dodge*, 805 So. 2d at 993 (concluding admission of blood test was proper based on testimony of supervisor of nurse who drew blood and trooper who observed blood draw).  Thus, to the extent counsel failed to object to the admission of the blood test results based on the absence of Brown's testimony or to object to the admission of Brown's paramedic certification, a reasonable probability does not exist that the outcome of the trial would have been different had counsel done so.  Accordingly, claim four is denied pursuant to Section 2254(d).

     **E.**    ***Claim Five***

     Petitioner asserts that his right to present a complete defense was thwarted and he

is actually innocent. In support of his claim, Petitioner maintains that the victim was the sole cause of the accident because she was impaired by alcohol and narcotics and caused him to wreck when she collapsed. Petitioner contends that counsel failed to call an expert to establish his defense and the trial court erred by ruling that the medical examiner could not testify concerning the toxicology report.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (Doc. No. 2 at 105-12.) The state court reasoned that counsel attempted to admit the victim's toxicology report through the medical examiner and repeatedly sought to present evidence to establish that the victim was the sole cause of the accident. *Id*. The state court further determined that Petitioner failed to demonstrate prejudice resulting from counsel's failure to call a custodian of records from the laboratory that conducted the toxicology test on the victim's blood in order to get the report admitted into evidence. *Id.* at 108-11. In so ruling, the state court reasoned that ample evidence was presented demonstrating that the victim was drinking and was acting like she was under the influence of Oxycontin. *Id*.

The state court's denial of this claim is supported by the record. Throughout the trial, counsel attempted to present evidence to establish that the victim was the sole cause of the accident. Counsel sought to admit the victim's toxicology report, but the trial court determined it was not admissible pursuant to the business records exception absent testimony from the custodian of records from the laboratory that analyzed the blood. Nevertheless, the victim's friend and Petitioner testified that the victim had been drinking

15

throughout the night of the accident. Petitioner also testified that the victim was behaving as is she was under the influence of oxycontin, which she was known to use. Petitioner said that the victim stood up on the motorcycle, fell over him, and caused him to hit his face on the gas tank, which in turn caused the accident. Thus, the jury heard evidence from which it could determine that the victim was the sole cause of the accident.

Moreover, even if counsel had called an expert to testify concerning the victim's toxicology report to show she caused the accident, such evidence would have been refuted by Petitioner's statements to police. Petitioner told police in his taped statement that the accident occurred when he reached back to give the victim a kiss at which time the motorcycle went off of the road. (Doc. No. 8-4 at 35, 65-67.) Officer Marcinek asked Petitioner if the victim had done anything that would have manipulated his control of the bike, and Petitioner responded negatively. (Doc. No. 8-4 at 64-65.) Therefore, no reasonable probability exists that the admission of the toxicology report or the testimony of an expert regarding the report would have resulted in a different outcome. Accordingly, claim five is denied pursuant to Section 2254(d).

### F.    *Claims Six and Eight*

In claim six, Petitioner contends that the trial court violated his constitutional rights by preventing counsel from cross-examining the medical examiner regarding the victim's toxicology report. In claim eight, Petitioner asserts that the statutory presumption of impairment jury instruction resulted in a fundamentally unfair verdict, which should have been set aside.

16

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)   (i)   there is an absence of available State corrective process; or
> >
> >         (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.  *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually

17

presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding

would have been different.  *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

In the instant case, the record establishes that Petitioner raised claims six and eight in his Rule 3.850 motion.  The state court denied the claims because they should have been raised on direct appeal and were not cognizable in a Rule 3.850 motion.  (Doc. No. 2 at 127-28.)  Therefore, claims six and eight are procedurally barred from review by this Court, absent application of an exception to the procedural default bar, because they were found to be procedurally barred by the state court.[6]  *See, e.g., Lang v. Sec'y, Dep't. of Corr.,* No. 8:04-cv-2547-T-17EAJ, 2007 WL 1120333, *4 (M.D. Fla. Apr. 13, 2007) (holding claim that trial court erred by failing to renew offer of counsel was procedurally barred because the

---

[6]To the extent Petitioner raised any portion of claim eight on direct appeal from his conviction and sentence, the claim was not raised as a federal constitutional violation. Thus, the claim as presented in the instant action is procedurally barred from review by this Court.

petitioner did not raise claim on direct appeal).

Petitioner has failed to demonstrate either cause or prejudice to overcome the procedural default.  Likewise, Petitioner has not demonstrated that he is actually innocent. Accordingly, claims six and eight are procedurally barred from review by this Court.

### G.    Claim Seven

Petitioner asserts that the prosecutor knowingly presented false testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1972).  Specifically, Petitioner contends that Officer Marcinek lied about arriving at the scene before the paramedics.  Petitioner maintains that Officer Marcinek directed Officer Palmer to prevent the paramedics from rendering aid to the victim until Officer Marcinek arrived.  Petitioner complains that counsel failed to call the paramedics or to admit the Florida Traffic Crash Report into evidence to impeach Officer Marcinek's testimony regarding when he arrived at the scene. Petitioner maintains that Officer Marcinek's purported directive not to render aid until he arrived caused the victim's death.

Petitioner raised this claim in his Rule 3.850 motion as a claim of ineffective assistance of counsel.  The state court denied the claim pursuant to *Strickland*.  (Doc. No. 2 at 112-14.)  The state court first noted that defense counsel argued that Officer Marcinek attempted to prevent the paramedics from aiding the victim while at the scene and that he pronounced the victim dead before the paramedics arrived.  *Id.*  The state court further concluded that the evidence established that Officer Marcinek did not perjure himself regarding when he arrived at that scene and denied Petitioner's contention that he

20

prevented the paramedics from assisting the victim.  *Id.*

A petitioner can establish a due process violation pursuant to *Giglio* by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment."  *United States v. Elso*, 364 F. App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).  "'To obtain a reversal on the grounds that the government relied on perjured testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false.'"  *Id.* (quoting *United States v. Bailey*, 123 F.3d 1381, 1396 (11th Cir. 1997)).  "The use of testimony that is inconsistent with a witness's prior testimony or that of a codefendant does not suffice to show that the proffered testimony was false."  *Id.*  (citing *Hays v. State of Ala.*, 85 F.3d 1492, 1499 (11th Cir. 1996), and *United States v. Michael*, 17 F.3d 1383 (11th Cir. 1994)).

Petitioner in the instant case has not demonstrated that Officer Marcinek gave false testimony or that the prosecution knowingly presented false testimony.  Officer Marcinek testified that he arrived on the scene after Officer Palmer but before the paramedics.  (Doc. No. 8-3 at 92.)  A crime scene video was admitted into evidence.  (Doc. No. 8-3 at 357.) After the video was played for the jury, defense counsel asked Officer Marcinek if the video depicted him standing between the paramedics and the victim's body and telling the paramedics, "She's Signal 7", indicating she was dead.  (Doc. No. 8-4 at 7-8.)  Thus, the video corroborated Officer Marcinek's testimony that he arrived before the paramedics.

Additionally, the video refutes Petitioner's contention that Officer Marcinek directed Officer Palmer to prevent the paramedics from rendering aid until he arrived given that the video depicts Officer Marcinek on the scene when the paramedics arrived. Petitioner has not presented an affidavit from the paramedics that contradicts either Officer Marcinek's testimony or the video evidence.

Furthermore, Petitioner has not demonstrated that even assuming Officer Marcinek committed perjury, a finding not made by this Court, that a reasonable probability exists that the perjured testimony could have affected the judgment. Petitioner maintains that the purportedly perjured testimony is pertinent to whether Officer Marcinek caused the victim's death by preventing the paramedics from rendering aid to the victim. Nevertheless, the medical examiner testified that the victim died from blunt force trauma to the head which caused severe brain injury. (Doc. No. 8-3 at 58-59.) Additionally, in Petitioner's taped statement to police, he indicated that after the police arrived, he did not feel a pulse on the victim. (Doc. No. 8-4 at 75.) The evidence established that the police arrived before the paramedics. Therefore, the victim died before the paramedics arrived.

Finally, as discussed *supra,* Petitioner admitted in his statement to police that the accident occurred after he turned his head to give the victim a kiss and went off the road. Further, the blood test result indicated that Petitioner's blood alcohol level was .105. Pursuant to Florida law, the State is only required to prove that the defendant caused or contributed to the cause of the death of the victim while under the influence of alcohol. Fla. Stat. § 316.193(1), (3) (2002). Even assuming Officer Marcinek prevented the paramedics

from aiding the victim, ample evidence was presented establishing that Petitioner caused or contributed to the victim's death.   Based on the foregoing, Petitioner has failed to demonstrate a *Giglio* violation or that counsel was ineffective in relation to Officer Marcinek's testimony.   Accordingly, claim seven is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.   However, a  prisoner need not show that the appeal will succeed.   *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.   Moreover, Petitioner cannot

23

show that jurists of reason would find this Court's procedural rulings debatable.  Petitioner

has failed to make a substantial showing of the denial of a constitutional right.   Thus, the

Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Peppe K. Park

is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this

case.

**DONE AND ORDERED** in Orlando, Florida, this 31st day of January, 2013.


ROY B. DALTON, JR.
United States District Judge


Copies to:
OrlP-1 1/31
Counsel of Record
Peppe K. Park